UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

AMERICAN ENERGY CORP.,

> Plaintiff,

> > Case No. 2:13-cv-886
> > JUDGE SARGUS

v.             Magistrate Judge Abel

AMERICAN ENERGY PARTNERS, *et al.*,

> Defendants.

## OPINION AND ORDER

This case is before the Court on Defendants' second motion to dismiss for failure to state a claim and lack of personal jurisdiction or, alternatively, to transfer venue. (Doc. 18). This motion is a renewal of Defendants' previously-filed motion to dismiss. (Doc. 6). For the reasons that follow, Defendants' second motion to dismiss (Doc. 18) is **DENIED**. Defendants' first motion to dismiss (Doc. 6) is **DENIED as moot**.

## I. POSTURE AND BACKGROUND

On August 23, 2013, Plaintiff, American Energy Corporation, ("Am. Corp.") dispatched a letter to Defendant, American Energy Partners ("Am. Partners"), and addressed to the attention of Defendant, Aubrey McClendon. (Doc. 14, Ex. 13, C & D Ltr.). This letter alleged that Am. Corp. had a valid trademark and trade name in the name "American Energy" and that Am. Partners was infringing that trade name and trademark by its use of the name, "American Energy Partners" in the development and sale of energy resources in Ohio. *Id.* More specifically, the letter alleged that Am. Corp. had, since 1993, marketed and sold coal in Ohio and the surrounding East, Midwest, and Southeast, under the name "American Energy Corporation." *Id.*

Am. Partners, the letter continued, had only recently incorporated and become engaged in the development of Utica shale gas in Ohio but was now in direct competition with Am. Corp. *Id.* The substantial similarity of the names and Am. Corp.'s prior possession of the mark/name, said the letter, made Am. Partners an infringer under Ohio law. *Id.* The letter threatened suit in the State of Ohio if Am. Partners did not cease using the "American Energy" name and publicize the change. *Id.*

According to Am. Corp., notwithstanding the fact that the letter gave Am. Partners until August 28 to respond, Am. Corp. agreed, upon request by Am. Partners, to forebear filing suit until August 30. (Doc. 28, P. Re. in Opp. to Dis. at 3). Before that time was up, however, on August 29, 2013, Am. Partners filed a declaratory judgment action in the Western District of Oklahoma seeking an order that Am. Corp. lacked a protectable interest in the name "American Energy" and that Am. Partners did not infringe whatever names or marks Am. Corp. held. Compl. *in passim*, *Am. Energy Partners LP v. Am. Energy Corp.*, No.: 5:13-cv-927 (W.D. Okla. Aug. 29, 2013), ECF No.: 1. On August 30, Am. Corp. sued Am. Partners and its CEO, Aubrey McClendon, in the Belmont County, Ohio, Court of Common Pleas. (Doc. 2, Compl.) Defendants promptly removed the case to this Court based on diversity. (Doc. 1, Not. of Remov.).

Defendants then moved to dismiss for failure to state a claim and lack of personal jurisdiction or, in the alternative, to transfer this case to the Western District of Oklahoma. (Doc. 6, D. 1st Mot. to Dis). In October, Plaintiff amended its complaint to add an additional entity, American Energy – Utica, LLC, ("Am. Utica") an affiliate of Am. Partners. (Doc. 14, Amend. Compl.). In response, Defendant, in November, renewed its motion to dismiss as to the amended complaint. (Doc. 18, D. 2d Mot. to Dis.).

2

Meanwhile, on January 9, 2014, the Western District of Oklahoma dismissed Am. Partners' declaratory judgment action on the grounds that it lacked personal jurisdiction over Am. Corp. *See* Order, *Am. Energy Partners LP v. Am. Energy Corp.*, No.: 5:13-cv-927 (W.D. Okla. Jan. 9, 2014), ECF No.: 25. Subsequently, in March of 2014, the parties in this case completed briefing Defendants' motion to dismiss or transfer. (Docs. 28, 29). Despite the dismissal by the Western District of Oklahoma for lack of personal jurisdiction over Am. Corp., Defendants continue to argue, among other things, that this Court should transfer venue to that District. (Doc. 29, D. Reply in Supp. of Dis at 9-11).

## II. DISCUSSION

### A. Venue Transfer

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a) (2012). The Defendants spill much ink attempting to explain how it would be both convenient and just if the Ohio plaintiff, who operates not at all in Oklahoma, whose trademark, if infringed, is infringed in Ohio, were forced to prove its Ohio law claims in a court in Oklahoma. However, the Court is spared the chore of addressing those arguments because a venue transfer to the Western District of Oklahoma is not within this Court's power to grant.

The Sixth Circuit and United States Supreme Court have explained that "the transferee court must have personal jurisdiction and proper venue over the action . . . before a transfer under § 1404(a) is proper." *Bunting v. Gray*, 2 F. App'x 443, 448 (6th Cir. 2001) (citing *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960)). In fact, under the versions of 28 U.S.C. § 1404 operative when *Bunting* and *Hoffman* were decided, even the parties' consent was insufficient to permit transfer to an otherwise improper venue. *Id.* However, in 2011, Congress amended 28

3

U.S.C. § 1404 to allow transfer "to any district or division to which all parties have consented."
Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, Title II, §
204, 125 Stat. 758, 764 (2011). Thus, a Court now may, with consent, transfer venue to a court
which, otherwise, would lack personal jurisdiction over the parties. But, absent consent, a
would-be transferee court must have personal jurisdiction over the parties. Am. Corp. does not
consent to jurisdiction in Oklahoma. The Western District of Oklahoma has already decided that
it lacks personal jurisdiction over Am. Corp. given that there is not even a bare allegation that
Am. Corp. has ever had anything to do with Oklahoma. *See* Order at 4-7, *Am. Energy Partners
LP*, No.: 5:13-cv-927, ECF No.: 25. Thus, this Court cannot and will not transfer venue to the
Western District of Oklahoma.

## B. Personal Jurisdiction Over Defendant, Aubrey McClendon

### 1. Procedure

> The procedural scheme which guides the district court in disposing of Rule
> 12(b)(2) motions is well-settled. *Serras v. First Tennessee Bank Nat. Ass'n*, 875
> F.2d 1212, 1214 (6th Cir. 1989). The plaintiff bears the burden of establishing
> that jurisdiction exists. *McNutt v. General Motors Acceptance Corp.*, 298 U.S.
> 178, 189 (1936); *accord Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th
> Cir. 1988); *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974).

*Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (parallel citations omitted).

> Where, as here, the district court relies solely on written submissions and
> affidavits to resolve a Rule 12(b)(2) motion, rather than resolving the motion after
> either an evidentiary hearing or limited discovery, the burden on the plaintiff is
> "relatively slight," and "the plaintiff must make only a *prima facie* showing that
> personal jurisdiction exists in order to defeat dismissal[.]" In that instance, the
> pleadings and affidavits submitted must be viewed in a light most favorable to the
> plaintiff, and the district court should not weigh "the controverting assertions of
> the party seeking dismissal."

*Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citations

omitted) (quoting *Cohn*, 839 F.2d at 1169; *Theunissen*, 935 F.2d at 1458-59).

The parties here rely on their written submissions. Specifically, Plaintiff makes a number of allegations in its complaint and, for purposes of deciding the motion, Defendants accept them as true. (*See, e.g.*, Doc. 18, D. Mot. to Dis. at 8-9; Doc. 29, D. Reply in Supp. of Dis. at 3-5 (both arguing about the insufficiency of the amended complaint's allegations, rather than controverting the allegations)). Thus, in deciding the motion, the Court shall accept Plaintiff's allegations as true and enquire whether Plaintiff has made a *prima facie* showing that the exercise of personal jurisdiction over Aubrey McClendon would be appropriate.[1]

## 2. McClendon's Position as CEO is not Dispositive

The United States Supreme Court has "reject[ed] the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984). However, in the same breath the Supreme Court also explained that having personal jurisdiction over a company is not a sufficient ground to exercise jurisdiction over its officers in their individual capacities. *Id.* Thus, the jurisdiction of this Court over McClendon is neither enabled nor thwarted by McClendon's position as CEO of Am. Partners.

In opposition to this principle, Plaintiff argues that this Court should engage in a veil-piercing analysis and, finding that McClendon is no more than the alter-ego of Am. Partners and Am. Utica, attribute any jurisdictional connection between the those entities and Ohio to McClendon personally. (Doc. 28, P. Re. in Opp. to Dis. at 9). However, despite allegations that McClendon controlled the operations (as CEOs do) and named the corporations (as founders do),

---

[1] For the purposes of this inquiry, the Court shall use Ohio law. *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) (citations omitted) ("To determine whether personal jurisdiction exists over a nonresident defendant, federal courts apply the law of the forum state, subject to the constitutional limits of due process.").

Plaintiff fails to allege any specific facts that would justify such a conclusion. (*E.g.*, Doc. 14,

Amend. Compl. at ¶¶ 5, 6, 11, 12, 19, 25, 27, 51, 54).[2]

> In considering whether veil piercing is appropriate, Ohio courts employ a test:

> The corporate form may be disregarded and individual shareholders held liable
> for wrongs committed by the corporation when (1) control over the corporation by
> those to be held liable was so complete that the corporation has no separate mind,
> will, or existence of its own, (2) control over the corporation by those to be held
> liable was exercised in such a manner as to commit fraud or an illegal act against
> the person seeking to disregard the corporate entity, and (3) injury or unjust loss
> resulted to the plaintiff from such control and wrong.

*Dombroski v. Wellpoint, Inc.*, 119 Ohio St. 3d 506, 2008-Ohio-4827, 895 N.E.2d 538, at ¶ 18

(quoting *Belvedere Condo. Unit Owners' Ass'n v. R.E. Roark Cos.*, 617 N.E.2d 1075, syllabus ¶

3 (Ohio 1993)). In analyzing whether that test is satisfied,

> courts in Ohio consider numerous factors, including whether: 1) the corporation is
> adequately capitalized, 2) the corporation has observed corporate formalities, 3)
> the corporation is insolvent, 4) the alleged alter ego has held itself out as
> personally liable for the corporation's debts and obligations, 5) the corporation
> and the alleged alter ego have commingled funds, 5) the corporation has diverted
> corporate funds or property to the alleged alter ego, 6) the corporation and the
> alleged alter ego have maintained separate finances and record-keeping, or 7) the
> corporation is a mere facade for the operations of the alter ego.

*Barents Navigation Ltd. v. Western Overseas, Inc.*, No.: 3:98-cv-7606, 1999 U.S. Dist. LEXIS

21211, *13-14 (N.D. Ohio Dec. 13, 1999) (repeated number "5" original) (citing *LeRoux's*

*Billyle Supper Club v. DVJ's Plumbing*, 602 N.E.2d 685, 689 (Ohio Ct. App. 1991)). The

amended complaint alleges none of these factors or, for that matter, any facts that could justify

the conclusion that Am. Partners or Am. Utica are merely the alter egos of McClendon or shells

through which to perpetrate fraud. (*See* Doc. 14, Amend. Compl. *in passim*). "Piercing the

corporate veil . . . remains a 'rare exception,' to be applied only 'in the case of fraud or certain

---

[2] The numbering in the amended complaint, presumably due to a clerical error, is not entirely contiguous. Where
the Court cites to a numbered paragraph it shall be presumed to mean the first occurrence of that number unless
otherwise noted.

other exceptional circumstances.'" *Dombroski*, 2008-Ohio-4827, at ¶ 17 (quoting *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003)). This is a case of alleged trademark/trade name infringement – no such exceptional circumstances are set forth in the amended complaint.

The acts of Am. Partners and Am. Utica are not attributable to McClendon as their alter ego. Thus, when considering whether to exercise jurisdiction over McClendon, the question is what has McClendon done to subject himself to the jurisdiction of this Court? Or, to refine the question, given that the parties have submitted this motion on the written pleadings, what does Plaintiff allege that McClendon, personally, has done to invoke the jurisdiction of this Court?

### 3. General versus Specific Personal Jurisdiction

As a general matter:

> Jurisdiction may be found to exist either generally, in cases in which a defendant's "continuous and systematic" conduct within the forum state renders that defendant amenable to suit in any lawsuit brought against it in the forum state, or specifically, in cases in which the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum.

*Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996) (quoting *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 445-47 (1952)) (citing *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992)). However, under Ohio law, determining whether a:

> court has personal jurisdiction over a nonresident defendant involves a two-step analysis: (1) whether the long-arm statute and the applicable rule of civil procedure confer jurisdiction and, if so, (2) whether the exercise of jurisdiction would deprive the nonresident defendant of the right to due process of law under the Fourteenth Amendment to the United States Constitution.

*Kauffman Racing Equip., L.L.C. v. Roberts*, 126 Ohio St. 3d 81, 2010-Ohio-2551, 930 N.E.2d 784, at ¶ 28 (citing *U.S. Sprint Commc'ns Co. v. Mr. K's Foods, Inc.*, 624 N.E.2d 1048, 1051 (Ohio 1994)). This two-step analysis logically means two things: One, that the Ohio long-arm statute is not coterminous with due process. See, *e.g.*, *Goldstein v. Christiansen*, 638 N.E.2d 541,

545 n.1 (Ohio 1994). Two, that the maximum limits of personal jurisdiction in Ohio are set by the long-arm statute (or rule of civil procedure) which authorizes it. That is, step one in the jurisdiction analysis is always to ask whether the long arm statute[3] confers jurisdiction – if it does not, the inquiry is over. Considerations of due process thus only serve, in the second step, to limit, never to expand, jurisdiction. Hence, the outermost limits of personal jurisdiction in Ohio are those set by the long-arm statute (though they may be further limited by due process).[4] Due process, of course, permits the exercise of general jurisdiction. *See, e.g.*, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2850-51 (2011). But does the long arm statute?

Ohio's long-arm statute explicitly authorizes the exercise of specific, rather than general, jurisdiction. "A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's" contacts with Ohio as enumerated in the long-arm statute. Ohio Rev. Code § 2307.382(A) (1988) (emphasis added). In short, step one of the analysis is "whether the long-arm statute . . . confer[s] jurisdiction" *Kauffman Racing*, 2010-Ohio-2551, at ¶ 28, and the long-arm statute confers jurisdiction over persons who had contacts with Ohio "as to [the] cause of action arising from" the contacts. Ohio Rev. Code § 2307.382(A). With this in mind, it is unsurprising that a number of cases hold that Ohio does not recognize general jurisdiction. *Conn v. Zakharov*, 667 F.3d 705, 717-18 n.6 (6th Cir. 2012); *Indus Trade & Tech., LLC v. Stone Mart Corp.*, No.: 2:11-cv-637, 2011 U.S. Dist. LEXIS 144668, *5-7 n. 1 (S.D. Ohio Dec. 14, 2011) (both collecting cases for and against Ohio's recognition of general jurisdiction).

---

[3] Or applicable rule of civil procedure (though there appears to be no relevant rule to this case).

[4] As previously mentioned, rules of civil procedure can also authorize jurisdiction but none is relevant here.

On the other hand, Ohio's long-arm statute also provides, "<u>When jurisdiction over a person is based solely upon this section</u>, only a cause of action arising from acts enumerated in this section may be asserted against him." Ohio Rev. Code § 2307.382(C) (emphasis added). The unwritten reciprocal to the emphasized portion is that sometimes jurisdiction might not be based solely upon the long-arm statute. In addition, some of the enumerated bases for jurisdiction in the long-arm statute include language that is reminiscent of general jurisdiction. For instance, one such basis is, "Causing tortious injury in [Ohio] by an act or omission outside this state if [one] . . . engages in any other persistent course of conduct . . . in this state . . . ." Ohio Rev. Code § 2307.382(A)(4). Thus, several cases have held that Ohio recognizes general jurisdiction. *See Conn*, 667 F.3d at 717-18 n.6; *Indus Trade & Tech., LLC*, 2011 U.S. Dist. LEXIS 144668, *5-7 n. 1 (both collecting cases).

However, the Sixth Circuit, in *Conn*, reconciled this split of authority, holding that "it is clear that under Ohio law, a court may exercise personal jurisdiction over a non-resident defendant only if specific jurisdiction can be found under one of the enumerated bases in Ohio's long-arm statute." *Conn*, 667 F.3d at 718. Both federal districts in Ohio have since recognized that the dispute is settled. *See, e.g., Lexon Ins. Co. v. Devinshire Land Dev., LLC*, No.: 1:10-cv-555, 2013 U.S. Dist. LEXIS 66958, *7 (S.D. Ohio May 10, 2013); *Puronics, Inc. v. Clean Res. Inc.*, No.: 5:12-cv-1053, 2013 U.S. Dist. LEXIS 5414, *11-13 n.3 (N.D. Ohio Jan. 14, 2013). Hence, despite the Plaintiff's arguments regarding general jurisdiction, this Court shall consider only whether the principles of specific jurisdiction show McClendon to be within the personal jurisdiction of this Court.

### 4. Ohio's Long-Arm Statute as Applied to McClendon

Of potential relevance to this case, Ohio's long-arm statute provides:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

. . .

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

. . .

(8) Having an interest in, using, or possessing real property in this state;

. . . .

Ohio Rev. Code § 2307.382(A).  A review of the amended complaint reveals 22 allegations relating to Aubrey McClendon by name. (Doc. 14, Amend. Compl. at ¶¶ 1, 5-6, 8, 11-12, 19, 25-29, 41, 51, 53-59, 62).  Of these, several are duplicative of each other, some are conclusory, and only a few are even arguably relevant to jurisdiction.  As the Court ultimately determines that the allegations are sufficient to bring McClendon within Ohio's long-arm statute, only the most relevant of the allegations shall be addressed.

The relevant allegations against McClendon all concern the same thing – that McClendon named Am. Utica and Am. Partners and intended them to injure Am. Corp.:

11. Aubrey McClendon's decision to select "American Energy Partners, LP" and "American Energy — Utica, LLC" as names for his companies, when both intend to compete against American Energy Corporation's Ohio-produced coal in the same marketplace will lead to substantial confusion.

51. The fact that both the "American Energy — Utica, LLC" and "American Energy Partners, LP" names were selected by Aubrey McClendon and prominently utilize "American Energy" as a family mark demonstrates an intent to create consumer and public recognition in "American Energy" as

10

being directly associated with Defendants in the relevant industry and geography.

54. Upon information and belief, Aubrey McClendon created American Energy Partners and American Energy — Utica, has near-exclusive control over both companies, and is the party who individually was responsible for the selection of the "American Energy Partners, LP" and "American Energy — Utica, LLC" names.

55. In the past, Aubrey McClendon has attempted to compete with coal producers by several means, including efforts to disparage the use of coal. For example, he contributed substantial sums to the Sierra Club for its "Beyond Coal" campaign, which aimed to "shut down as many coal-fired powered plants as it could."

56. Aubrey McClendon also funded an anti-coal ad campaign sponsored by the American Lung Association.

57. When questioned about whether his "attack on coal" was self-interested, Aubrey McClendon stated "I think most people act in their self-interest."

58. Aubrey McClendon's decision to select "American Energy Partners, LP" and "American Energy — Utica, LLC" as names for his new companies, when they intend to compete against Ohio-produced coal in the marketplace for power generation fuel, will lead to substantial confusion and is another attempt to compete with, disparage, and harm the business of coal producers, particularly American Energy Corporation.

(Doc. 14, Amend. Compl. at ¶¶ 11, 51, 54-58 (citations omitted)).  This is a close call but these allegations, if true, are sufficient to show a *prima facie* justification for the exercise of personal jurisdiction over McClendon because they allege an intentional injury, inflicted by McClendon, using his companies as tools.

This Court has already determined that the amended complaint does not sufficiently allege facts to justify piercing the corporate veil.  Thus, the actions of the companies, Am. Partners and Am. Utica, are not to be imputed to McClendon, personally. *See supra* pp. 5-7. However, even though the amended complaint does not allege facts that would justify veil piercing, it does allege that McClendon intentionally used these companies to injure Am. Corp. by violating laws governing trademarks and trade names. (Doc. 14, Amend. Compl. at ¶¶ 11, 51, 54-58).  That is, McClendon is not liable or subject to jurisdiction simply because Am. Partners

11

and Am. Utica are – he is not their alter ego nor they his.  But that does not mean that McClendon, who is allegedly able to exercise a significant degree of control over the companies he founded, cannot have personally used them as instruments of intentional infringement.

"Although the Sixth Circuit has not addressed the issue, several district courts within the Sixth Circuit have held that employees and corporate officers can be held individually liable under the Lanham Act." *Coach Inc., v. The Uniform Place*, No. 5:11-cv-2191, 2012 U.S. Dist. LEXIS 63665, *5-6 (N.D. Ohio April 4, 2012) (citing *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978); *State Farm Mut. Auto. Ins. Co. v. Sharon Woods Collision Ctr., Inc.*, No. 1:07-cv-457, 2007 U.S. Dist. LEXIS 86651, *3-5 (S.D. Ohio Nov. 26, 2007); *CCA Global Partners, Inc., v. Carpetmax Flooring Ctr.*, No. 4:02-cv-215, 2006 U.S. Dist. LEXIS 9228, *6-8 (W.D. Ky. March 6, 2006); J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25:24 (4th ed. 2005); *Hair Assocs., Inc. v. Nat'l Hair Replacement Servs., Inc.*, 987 F. Supp. 569, 590-91 (W.D. Mich. 1997); *Two Men & a Truck/Int'l, Inc. v. Two Men & a Truck/Kalamazoo, Inc.*, No. 5:94-cv-162, 1995 U.S. Dist. LEXIS 11295, *9 (W.D. Mich. July 24, 1995)) (stating "where an officer personally takes part in the infringing activity or direct others to do so, the officer is liable as an actor, not merely as an agent or owner of the corporation").

> Other circuit courts have reached the same conclusion. *Mead Johnson & Co. v. Baby's Formula Service, Inc.*, 402 F.2d 19, 23 (5th Cir. 1968) (corporate officer may be individually liable for trademark infringement); *Donsco, supra* (individual defendant may be held liable for trademark infringement if he or she directly participated in the infringement); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) (individual defendant may be held liable for trademark infringement if he or she intentionally induced another to infringe a trademark); *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) ("If an individual actively and knowingly caused the infringement, he is personally liable."); *Babbit Electronics, Inc. v. Dynascan Corp.*, 38 F.3d 1161 (11th Cir. 1994) (corporate officer who directs, controls, ratifies, participates in,

12

or is moving force behind infringing activity is personally liable for trademark infringement without regard to piercing of corporate veil).

*The Uniform Place*, 2012 U.S. Dist. LEXIS 63665, *6-7; *see also Coach, Inc., v. Younes Corp.*, No. 11-11559, 2012 U.S. Dist. LEXIS 144516, *5-8 (E.D. Mich. Oct. 5, 2012) (quotation marks omitted) (collecting cases and commenting, "corporate officers can be held personally liable under this statute in those instances where the corporate officer personally takes part in the infringing activity or directs others to do so.").

The allegations in the amended complaint, when taken as true, allege that McClendon held a vendetta against the coal industry and sought to injure Am. Corp. by intentionally choosing names for his companies that he knew would infringe and then directing them to compete with Am. Corp. (Doc. 14, Amend. Compl. at ¶¶ 54-58). This is not an allegation that McClendon is liable and a proper subject of jurisdiction because the companies infringe. It is an allegation, rather, that McClendon personally induced, desired, or procured the companies' infringement – in essence, that McClendon is an infringer. Under these allegations, McClendon is like an intentional tortfeasor who directs his West Virginia corporation to erect a catapult and launch rocks across the Ohio River to smash the windows of an Ohio rival. True, the tortfeasor has never set foot in Ohio in relation to the tort. And true, it was the company and the rock that caused the injury in Ohio. But the tortfeasor set the company, and therefore the rock, in motion, he directed its course, and he intended the result.

The amended complaint alleges that McClendon intentionally set out to injure an Ohio corporation by naming his companies similarly and then directing them to Ohio to compete with the Ohio corporation. While the Court makes no comment on the likelihood of ultimately proving liability against McClendon under this theory, at this stage of the proceedings, such an allegation is sufficient *prima facie* justification for the exercise of personal jurisdiction over

McClendon under Ohio's long-arm statute. Ohio Rev. Code § 2307.382(A)(3, 6) (providing for jurisdiction over one who causes tortious injury in Ohio). Because the Court has determined that the amended complaint alleges a sufficient basis under Ohio's long arm statute for the exercise of personal jurisdiction over McClendon, the Court must now determine whether that exercise would comport with due process.

### 5. Due Process

"[T]he Due Process Clause requires that the defendant have sufficient 'minimum contact[s]' with the forum state so that finding personal jurisdiction does not 'offend traditional notions of fair play and substantial justice.'" *Conn*, 667 F.3d at 712 (quoting *Third Nat'l Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). As discussed above, due process comprehends two flavors of personal jurisdiction – general and specific. Though Ohio's long-arm statute only allows for specific jurisdiction, the Court can consider both general and specific jurisdiction when considering whether due process is satisfied. *See, e.g.*, *Conn*, 667 F.3d at 712-13. However, the allegations in the complaint do not lend themselves to the conclusion that McClendon personally has had "continuous and systematic" contacts with Ohio or that McClendon is "essentially at home" in Ohio as would be required for a finding of general jurisdiction. *See Goodyear*, 131 S. Ct. at 2851; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). Thus, the Court turns to the question of whether due process can be satisfied according to the principles of specific jurisdiction.

The Sixth Circuit has held that a finding of specific jurisdiction under the Due Process Clause comprises three elements:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the

defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Conn*, 667 F.3d at 713 (citing *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002)).

The first element "ensures that the defendant's actions create a 'substantial connection' to the forum state, such that the defendant 'should reasonably anticipate being haled into court there.'" *Cmty. Trust Bancorp, Inc. v. Cmty. Trust Fin. Corp.*, 692 F.3d 469, 471-72 (6th Cir. 2012) (quoting *Neogen Corp. v. Neo Gen. Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002)). In other words, the "requirement protects a defendant from being 'haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person.'" *Cmty. Trust Bancorp*, 692 F.3d at 472 (quoting *Neogen Corp.*, 282 F.3d at 889); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). In this case, the Court focuses on the allegation that McClendon intentionally used his companies to strike an unfair blow against Am. Corp. and, as to this motion, assumes the truth of that allegation. With that assumption, McClendon certainly should have anticipated being haled into court. Under that allegation, McClendon intended to, and did, in fact, unfairly injure an Ohio corporation. His presence in this Court is not the result of random, fortuitous, or attenuated contacts, nor the unilateral activity of another party – it is the result of McClendon's own intentionally tortious conduct purposefully directed to this forum.

"Th[e] [second] factor does not require that the cause of action formally arise from defendant's contacts with the forum; rather, this criterion requires only that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities." *Bird*, 289 F.3d at 875 (quotation marks omitted) (quoting *Third Nat'l Bank*, 882 F.2d at 1091). The alleged consequences in this case have a substantial connection to the corporate activities in Ohio that that McClendon intentionally directed. Specifically, the alleged confusion to Ohio

15

consumers and injury to Am. Corp. are the claimed result of McClendon directing Am. Partners and Am. Utica to operate in Ohio using the American Energy name.

"An inference arises that the third factor is satisfied if the first two requirements are met." *Bird*, 289 F.3d at 875 (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996)). *CompuServe*, in fact, noted, "if we find . . . the first two elements of a *prima facie* case-- purposeful availment and a cause of action arising from the defendant's contacts with the forum state--then an inference arises that this third factor is also present." 89 F.3d at 1268. "Several factors are relevant to the reasonableness inquiry, 'including the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies.'" *Bird*, 289 F.3d at 875 (quoting *CompuServe, Inc.*, 89 F.3d at 1268). Taking the allegations of the amended complaint as true, Am. Corp., Am. Partners, and Am. Utica all operate in Ohio. The infringement, if any there was, occurred in Ohio and potentially confused Ohioans. McClendon may be burdened by litigating in Ohio rather than, for example, his home district in Oklahoma. However, as already articulated, McClendon's home district would not be an appropriate forum for this suit and it is not argued that any other district would be appropriate. Moreover, the other factors, the interest of Ohio in protecting Ohio consumers and the interest of an Ohio corporation in defending its trademark/trade name against an allegedly intentional infringer are, on the allegations here, strong.

The exercise of personal jurisdiction over McClendon is proper under both Ohio's long-arm statute and the Due Process Clause of the United States Constitution. U.S. Const. amend. V; U.S. Const. amend. XIV, § 1; Ohio Rev. Code § 2307.382(A)(3). Accordingly, this Court shall exercise personal jurisdiction over Defendant, Aubrey McClendon.

## C. Failure to State a Claim

### 1. Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. Thus, a Rule 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983); Fed. R. Civ. P. 10(c).

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To meet this standard, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009) (clarifying and broadly applying the plausibility standard articulated in *Twombly*).

Several considerations guide whether a complaint meets the facial-plausibility standard. On one hand, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Further, the factual allegations of a pleading "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. On the other hand, a complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). When making this determination, a court must construe the claim at issue in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of

17

the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted).

### 2. Whether Plaintiff Pled Ownership

Defendants tender one basic argument as to why Am. Corp. fails to state a claim. Defendants contend that Am. Corp. failed to allege that it has a protectable trademark/trade name in the name "American Energy" and that, as ownership of a mark is a prerequisite to bringing any of the causes of action alleged, Am. Corp.'s case must be dismissed in its entirety. (Doc. 18, D. 2d Mot. to Dis. at 10-13; Doc. 29, D. Reply in Supp. of Dis. at 6-8). One obtains a trademark by, among other things, using a mark in commerce to identify one's goods or services to consumers. *See, e.g., Allard Enters. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 358 (6th Cir. 1998). Defendants argue that Am. Corp. never uses "American Energy" by itself but rather as part of a logotype involving the words "Century Mine" and various graphics including an outline of the continental United States and a bald eagle.[5] (Doc. 18, D. 2d Mot. to Dis. at 10-13; Doc. 29, D. Reply in Supp. of Dis. at 6-8). Trademark law forbids dissection of a mark and thus, so the argument goes, Am. Corp. lacks a valid trademark or trade name in "American Energy" that could be infringed by Defendants. (Doc. 18, D. 2d Mot. to Dis. at 10-13; Doc. 29, D. Reply in Supp. of Dis. at 6-8).

In making this argument, however, Defendants lose sight of one of the core principles for deciding a motion to dismiss – the factual matter in a complaint must be accepted as true. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. The amended complaint alleges, in relevant part:

---

[5] Defendants base this assertion on exemplar documents attached to the amended complaint. (*See* Doc. 18, D. 2d Mot to Dis. at 11 (citing Doc. 14, Exs. 5, 13) (arguing that these examples show that Am. Corp. lacks a protectable mark or name in "American Energy")).

2. American Energy Corporation is both a common law trade name and trademark (collectively, "Mark") and is the name of a corporation registered as a corporation for profit with the Ohio Secretary of State. Plaintiff has been registered in Ohio since American Energy Corporation was incorporated in Ohio on April 12, 1993.

3. American Energy Corporation has been engaged in the sale of Ohio coal to customers who produce electricity under the American Energy Corporation Mark since at least 2001.

4. For over a decade, American Energy Corporation has developed significant goodwill in the Ohio fossil fuel based power generation industry through marketing, sales and promotion under the American Energy Corporation Mark. American Energy Corporation is frequently reported on and discussed in industry trade publications and other news articles.

. . . .

16. Since 2001, Plaintiff has developed, marketed, promoted and sold coal to customers under the American Energy Corporation Mark.

. . . .

32. Plaintiff began its business development, marketing, promoting and selling Ohio-produced coal and conducting coal sales-related activities in Ohio under the American Energy Corporation Mark in 2001. American Energy Corporation's customers include energy utility and steel producers who purchase coal for use in their business operations and to generate electricity. As part of its business operations, American Energy Corporation is a party to coal sales contracts and, in addition, solicits and negotiates contracts for the sale of coal on behalf of coal-producing companies affiliated with Plaintiff.

33. Plaintiff uses and has used its American Energy Corporation Mark on its sales contracts, invoices, manifests, letterhead, marketing presentations and similar business-related documents for over a decade.

34. Plaintiff has substantial common law rights in its American Energy Corporation Mark arising from its substantial, continuous and exclusive use of the Mark over the years.

35. The substantial use of the American Energy Corporation Mark throughout Ohio and the surrounding region has caused customers in the relevant markets for Ohio-produced fossil fuels to associate "American Energy" solely and exclusively with American Energy Corporation's products and services.

. . . .

47. Defendants' prominent and repeated use of "American Energy" through the "American Energy Partners, LP" and "American Energy — Utica, LLC" names comes well after American Energy Corporation first used "American Energy" in its own American Energy Corporation Mark and well after the American Energy Corporation Mark became exclusively associated with American Energy Corporation.

(Doc. 14, Amend. Compl. at ¶¶ 2-4, 16, 32-35, 47) (citations omitted). Taken as true, these allegations are sufficient to show that Am. Corp. had a protectable mark in the name, "American Energy Corporation." True, the exemplars attached to the amended complaint comprise more than the words, "American Energy Corporation." (Doc. 14, Exs. 5, 13). However, the amended complaint nowhere alleges and this Court is not prepared (at the motion to dismiss stage) to infer, that these uses are the only uses that Am. Corp. made of the phrase "American Energy." Moreover, it is true that the amended complaint does not allege that Am. Corp. has a mark in just the formative, "American Energy," and "American Energy Corporation" is not identical to "American Energy Partners" or "American Energy – Utica." However, the amended complaint sufficiently alleges that "American Energy Partners," or "American Energy – Utica," when used within the power-generation industry, are confusingly similar to "American Energy Corporation." (*See, e.g.*, Doc. 14, Amend. Compl. at ¶¶ 35-36).[6] At the motion to dismiss stage of the case, no more is needed.

### III.    CONCLUSION

Defendants' second motion to dismiss (Doc. 18), which was a renewal of Defendants' previously-filed motion to dismiss (Doc. 6), is **DENIED**. Defendants' first motion to dismiss (Doc. 6) is **DENIED as moot**.

The Court shall not transfer venue. Aubrey McClendon is properly subject to this Court's exercise of personal jurisdiction. The amended complaint (Doc. 14) does state a claim upon which relief could be granted.

---

[6] This citation refers to the second occurrence of numbered paragraphs 35-36 and appears on page 13 of the amended complaint.

The Clerk is directed to **REMOVE** documents 6 and 18, from the Court's pending motions list.

   **IT IS SO ORDERED.**


\_\_\_\_5\-9\-2014\_\_\_\_                    _____
**DATE**                              **EDMUND A. SARGUS, JR.**
                                      **UNITED STATES DISTRICT JUDGE**